UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THOMAS AND SHARON NORMAND, :
on behalf of Themselves and all others :
similarly situated, :  CIVIL ACTION NO.
 :
 :
   Plaintiffs, :
 vs. :
 :  CLASS ACTION COMPLAINT
NESTLE PURINA PETCARE COMPANY, : AND DEMAND FOR JURY
a Missouri corporation : TRIAL
 :
 :
   Defendant. :

-----------------------------------------------------------------x

Plaintiffs Thomas and Sharon Normand ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this class action Complaint against Defendant Nestlé Purina Petcare Company ("Defendant").

## I. SUMMARY OF THE COMPLAINT

1. Plaintiffs brings this Class Action on behalf of all persons who purchased Beneful brand dog food ("Beneful") in the four years prior to the filing of this complaint and whose dogs became ill or died as a result of eating Beneful.  Beneful contains substances that are toxic to animals and that have resulted in the serious illness and death of thousands of dogs.

## II. JURISDICTION AND VENUE

2. This is a proposed class action.

3. This Court has jurisdiction over the subject matter presented by this Complaint because it is an action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiffs classes are a citizen of a

state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

4.      Plaintiffs allege that the total claims of the individual members of the Plaintiffs Classes in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).   As set forth below, Plaintiffs are citizens of New York, and Defendant can be considered a citizen of Missouri.   Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A).   Furthermore, the total number of members of the proposed Plaintiffs Classes are greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

5.      This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in New York.   Defendant also has sufficient minimum contacts with New York, and has otherwise purposely availed itself of the markets in New York through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in this district, and Plaintiffs purchased Beneful, the subject product of this action, in this judicial district and they reside in this judicial district.

### III.   PARTIES

7.      Plaintiffs, Thomas and Sharon Normand, are individuals more than 18 years old, and have at all material times been residents of Rochester, County of Monroe, New York.

8.      Defendant manufactures, distributes, markets, and sells pet foods, including Beneful. Defendant is a Missouri corporation, with its principal place of business at

Checkerboard Square, St. Louis, Missouri.   Defendant does business in New York and throughout the United States of America.  Defendant has sold dog food since 1957, and has sold Beneful since 2001.  Defendant has spent millions of dollars promoting trust and confidence among consumers in its pet food products.   Defendant holds itself out to the public as a manufacturer of safe, nutritious and high-quality pet food.

## IV.    FACTUAL ALLEGATIONS

**Beneful Kibble Dog Food**

9.     Defendant manufactures, markets, distributes, and sells dog food, including "wet" dog food, dog treats, and a variety of dry "kibble" style dog foods under the brand name "Beneful." This class action concerns "kibble," which includes "Purina Beneful Healthy Weight," "Purina Beneful Original," "Purina Beneful Incredibites," "Purina Beneful Healthy Growth For Puppies," "Purina Beneful Healthy Smile," "Purina Beneful Healthy Fiesta," "Purina Beneful Healthy Radiance," and "Purina Beneful Playful Life" (together, "Beneful"). The packaging in which Defendant sells Beneful states:

- "Satisfaction Guaranteed. If you're not happy, we're not happy.  Complete satisfaction or your money back…."

- "At Purina, we're unconditionally devoted to pets.  We've dedicated over 80 years to developing the high-quality products that satisfy the needs of dogs and cats."

- "100% Complete and Balanced Nutrition."

- "Yes, dogs can have it all—and should! How? A special blend of wholesome ingredients, including grains, real beef, and accents of vitamin-rich veggies! It gives dogs the complete nutrition they need and a taste they love." (Beneful Original.)

-  "Made with wholesome rice, real chicken, soy, and accented with veggies and apples, it has the complete nutrition adult dogs need…." (Beneful Healthy Weight.)

- "With real chicken, wholesome rice, and accents of vitamin-rich veggies, it has the complete nutrition puppies need.…" (Beneful Healthy Growth for Puppies.)

- "When your puppy is grown, Beneful has so many delicious ways to help keep him healthy and happy." (Beneful Healthy Growth for Puppies.)

10.   Over the past four years, consumers have made more than 3,000 online complaints about dogs becoming ill, in many cases very seriously ill, and/or dying after eating Beneful.  The dogs show consistent symptoms, including stomach and related internal bleeding, liver malfunction or failure, vomiting, diarrhea, dehydration, weight loss, seizures, bloat, and kidney failure.  Among the complaints posted by consumers are these:

- "After eating Beneful for just over a week, my dogs liver failed.  She was drinking way more than usual, stopped eating and was vomiting. She spent 2 days in intensive care with IV fluids and antibiotics."  Published January 31, 2015.

- "We started using Beneful dog food for our 9-year old dog Roxie a few weeks ago.  A few days later our dog started going to the bathroom all over our house.  She also started drinking a lot more water than usual…brought her to the Vet for blood work and her liver functions were really high…Two days later our dog had passed away in our family room."  Published December 23, 2014.

- "My dog Daisy started getting bad sick after my vet recommended Purina Beneful dog food.  She's vomiting, very weak, dehydrated, lethargic, couldn't walk. She's always been a happy playful yorkie.  We been to vet, spend 300 dollars on her."  Published October 19, 2014.

- "Dog (8 years old) getting surgery on 10/20/2014.  Vet said it was bladder stones, large ones. Asked us what type of dog food we use.  Beneful.  He said that makes sense, a lot of dogs come in with this condition, always Beneful."  Published October 17, 2014.

- "My 1 1/2 year old dog has been suffering with vomiting, diarrhea, lethargic and no desire to eat for the last three weeks.  We've been back and forth to the vet and vet hospital many times.   I've spent over $6,000 on overnight stays and exploratory surgery...My dog had been home for four days and all he was eating was chicken, cheerios, yogurt and pumpkin.  Last night he ate beneful and today we are back to square one…This food should not be on the market!!"  Published October 2, 2014.

- "I rescued a very healthy pug three years ago.  About two and a half years ago I had a coupon for Beneful.  My dog got very sick stopped eating was weak and

had loose diarrhea…Three months later my wonderful dog was dead.  I sent the UPC to Beneful.  They reimbursed me for the vet bills that were about $700.00." Published September 21, 2014.

- "We ran out of dog food one day and my husband brought home a bag of Beneful Healthy Fiesta...My 5 year old shar pei ate half a bowl and the next morning was kinda mopey looking.  I came home from work that night and he was throwing up bile everywhere.   We tried giving him water and he wouldn't even drink.  The next morning I found my dog dead.  Up until the day this food was given to him, he was a lively and happy dog.  I attribute his death to this horrible dog food that is still being sold.  After reading all of the complaints on this dog food, Purina should be ashamed and made to take this brand off of the shelves."  Published September 20, 2014.

- "…I bought a bag of Beneful from Walmart.  I weened my dog into it using the remainder of her science diet. As soon as she started eating the Beneful on its own, she would throw it up.  Every night for a week I would be woken up by her puking.  On Sunday I switched her back to the regular science diet (not sensitive) but she wouldn't eat it so I tried giving her Beneful and she wouldn't eat that...We're talking about a dog who LOVES her some boiled chicken.  Anyway after 3 days of her not eating anything except grass and barely drinking any water I took her to the vet.  They took her temperature rectally and when they pulled out the thermometer there was blood.  After lab work was done and came back clear, they did some feeling around and found her lower intestine to be swollen.  She has never had issues like this before…"  Published September 4, 2014.

- "After opening a new bag of Playful Life by Beneful my dog was horribly sick. He was vomiting, diarrhea, lethargic, wheezing and couldn't walk or eat. We rushed him to the vet where he was put on steroids, IV to re-hydrate and antibiotics.  He almost died. He was there for four days…This past Monda y we started him back on Beneful (the same bag).  He was worse than before in just hours.  We got him to the hospital and the vet got him on an IV and flushed his system.  He was sure it was this Lot of food."  Published August 7, 2014.

11.    On information and belief, these illnesses and deaths were caused by substances

in Beneful that are toxic to dogs, including, but not limited to:

(A.)    **Propylene glycol,** an automotive antifreeze component that is a known animal toxin      and      is      poisonous      to      cats      and      dogs (http://www.petpoisonhelpline.com/poison/propylene-glycol/).      Defendant lists propylene glycol high in the ingredient list of every formulation of Beneful.  On information and belief, Defendant adds it to Beneful to retain the food's moisture. The FDA has prohibited the use of propylene glycol in cat foods.  *See* 21 CFR 589.1001.  The regulatory prohibition is known to Defendant as a manufacturer of cat foods.

5

(B.)   **Mycotoxins,** a group of toxins produced by fungus that occurs in grains, which are a principal ingredient in Beneful. Independent consumer advocate group The Association for Truth In Pet Food conducted testing of Beneful Original and found that it contained dangerous levels of mycotoxins (http://associationfortruthinpetfood.com/wpcontent/ uploads/2015/01/PFTestInfoGraphic.jpg). Mycotoxins are a known, significant health risk to dogs. Consumer complaints about Beneful report symptoms that are consistent with mycotoxin poisoning (http://news.cornell.edu/stories/2005/12/vetcollege-caring-dogs-poisoned-contaminated-food).

**Plaintiffs' Experience with Beneful**

12.    Plaintiffs and their family owned a dog named Irie ("Irie"), an American Staffordshire Terrier, who was 11 years old when she died.

13.    On or before October 21, 2011, and several times prior and subsequently to, Plaintiffs purchased Beneful Healthy Fiesta Dry dog food.

14.    Around the beginning of 2013, Plaintiffs noticed that Irie, who had been otherwise healthy, began losing weight. Around May 2013, Irie began vomiting daily, and became lethargic and uninterested in her daily walks. Plaintiffs became concerned about Irie's declining health and the possibility that Beneful was causing these health issues.

15.    Plaintiffs brought Irie to her veterinarian with these health concerns around July 2013 and possibly once before July. Irie was examined by her veterinarian who noted Irie as "sick, not eating, yellow mucus, possibly bloody stool" and diagnosed Irie with kidney failure.

16.    On August 7, 2013, Irie died.

17.    Plaintiffs incurred significant veterinary and pharmaceutical expenses treating Irie's health issues.

18.    As a result of Defendant's conduct, Plaintiffs and the Classes have suffered economic losses including the purchase price of Beneful and veterinary and related medical

expenses. Plaintiffs and Classes members whose dogs have died have also lost the fair market value and the additional unique value of their pets.

## V.     CLASS ACTION ALLEGATIONS

19.     Plaintiffs brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class of all persons residing in the United States who purchased Beneful during the Class Period (the "Class") and who incurred expenses due to illness, injury or death of their dog resulting from the ingestion of Beneful.

20.     Additionally, Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a sub-class of all persons residing in the state of New York who purchased Beneful dog food for personal or household use and not for resale during the Class Period (the "New York Sub-Class") and who incurred any expenses due to illness, injury or death of their dog resulting from the ingestion of Beneful.

21.     Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns and any entity in which they have or have had a controlling interest.

22.     Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigation this matter.

23.     At this time, Plaintiffs do not know the exact number of the Class or the New York Sub-Class members; however, given the nature of the claims and the number of retail stores selling Beneful nationally, Plaintiffs believe that members are so numerous that joinder of all of them is impracticable.

24.     There is a well-defined community of interest in the questions of law and fact

involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a)      Whether Defendant made representations regarding the safety of Beneful, which it produced and sold;

b)      Whether the representations Defendant made regarding the safety and quality of Beneful were true, or whether Defendant knows whether they were true or not;

c)      Whether, by its misconduct as set forth here, Defendant has engaged in unlawful or fraudulent business practices;

d)      Whether the Defendant breached its express warranty;

e)      Whether the Defendant breached its implied warranty of merchantability;

f)      Whether Plaintiffs and the Class and Subclass members have been damaged.

25.      Plaintiffs' claims are typical of the claims of the Class and New York Sub-class because Plaintiffs, like all members of the Class and New York Sub-Class, purchased Beneful and sustained damages from Defendant's wrongful conduct.

26.      Plaintiffs will fairly and adequately represent and protect the interests of the Class and New York Sub-class.  Plaintiffs have retained counsel that is experienced in litigating complex class actions.  The interests of Plaintiffs are coincident with, and not antagonistic to the interests of the Class and New York Sub-class.  Defendant has no defenses unique to Plaintiffs.

27.      Plaintiffs do not anticipate any difficulty in the management of this litigation.

28.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.      The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

30.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of all members of the Class, although certain Class members are not parties to such actions.

31.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## COUNT I.

### Breach of Implied Warranty On Behalf of the Class

32.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

33.     Plaintiffs and Class members purchased Beneful pet food produced by the Defendant based on the implied understanding that Beneful was safe for their pets to consume.

34.     Beneful was and is not safe for pets to consume and has caused pets to become ill and/or die after consumption.

35.     Beneful constitutes a "good" within the meaning of Uniform Commercial Code Article 2.

36.     Defendant's conduct as described herein constitutes a breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose in that

Beneful is dangerous and not fit for its purpose as a dog food.

37.     As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and Class members have suffered damage in an amount to be proven at trial. Defendant had actual or constructive notice of such damages, and such damages may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties at the time they made warranties as to Beneful, and the probable result of the breach of such warranties.

## COUNT II.

### Breach of Express Warranty On Behalf of the Class

38.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

39.     The representations on Defendant's packaging created an express warranty that the contents shall conform to the representations of the package, including that Beneful is fit for consumption by pets, under both common law and section 2-313 of the Uniform Commercial Code. Said representations include, but are not limited to, Beneful being "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

40.     Plaintiffs and the Class reasonably and foreseeably relied on this warranty in the contract for purchase of Beneful for the purpose of feeding their pets, such that the warranty became a basis of the bargain by which Plaintiffs and the Class chose to purchase Beneful.

41.     Beneful was not safe for pets to consume and caused pets to become ill and/or die.

42.     The unsafe nature of the pet food constituted a breach of the express warranty.

43.     As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and Class members have suffered damage in an amount to be proven at trial. Defendant has actual or constructive notice of such damages, and such damages may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties at the time they made warranties as to Beneful, and the probable result of the breach of such warranties.

## COUNT III.

### Negligence On Behalf of the Class

44.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

45.     Defendant owed a duty of care to Plaintiffs and the Class to offer pet food free from deleterious and harmful effects and suitable for consumption by dogs.

46.     Defendant breached this duty by selling Beneful, which is harmful and deleterious, without adequate quality control and testing; without using proper manufacturing and production practices; without properly investigating reports of pet deaths and illnesses following consumption of Beneful; and without adequately warning Plaintiffs and the Class of the dangers on the product packaging.   Such conduct by Defendant was negligent and/or reckless.

47.     Defendant knew or should have known that Beneful posed a risk of harm to pets; that purchasers of Beneful, including Plaintiffs and the Class, would not recognize the risk; and that consumption of Beneful by pets would foreseeably result in injury and death to pets, constituting property damage to Plaintiffs and the Class.

48.     As a proximate cause of Defendant's negligent acts alleged herein, Plaintiffs

and the Class members suffered injury to property, specifically in the illness and deaths of their

pets and associated expenses, in an amount to be proven at trial.

## COUNT IV.

### Negligence Misrepresentation On Behalf of the Class

49.     The allegations contained in each paragraph set forth above in this Complaint

are incorporated by reference as if fully set forth herein.

50.     Defendant owed Plaintiffs and the Class a duty to exercise reasonable care in

representing the safety of Beneful.

51.     Defendant falsely represented that Beneful was safe for consumption by dogs.

52.     In reality, Beneful caused dogs to become ill and, as in this case, to die.

53.     Plaintiffs and the Class reasonably relied on the information provided by

Defendant regarding the safety of Beneful.

54.     As a proximate cause of Defendant's false representations, Plaintiffs and the

Class members suffered injury to property, specifically in the illness and deaths of their pets and

expenses incurred, in an amount to be proven at trial.

## COUNT V.

### Strict Products Liability On Behalf of the Class

55.     The allegations contained in each paragraph set forth above in this Complaint

are incorporated by reference as if fully set forth herein.

56.     Defendant, as set forth above, is a manufacturer and distributor of Beneful.

57.     Beneful in all its forms is defective in design and/or manufacture in that it

contains and ingredient or ingredients that are harmful to animals upon consumption.  Beneful

was further defective due to inadequate testing.  Defendant knew that Beneful would be

purchased and used without inspection, or testing for defects and harmful substances by the purchaser.

58.     Beneful was under the exclusive control of Defendant and was sold without warning as to its health risks.  Defendant had a duty to warn purchasers of the health risks posed by Beneful in an effective manner.  Such warnings should have been placed on the packaging at point-of-sale or in another manner reasonably calculated to fairly warn purchasers of the danger.

59.     The kinds of harm, which ensued Plaintiffs and the Class and their pets, were foreseeable results of the defects in Beneful.

60.     Neither Plaintiffs nor any member of the Class had any reason to know, prior to or at the time of purchase, or any time prior to the injuries to their pets suffered, that Beneful was defective and harmful.

61.     Plaintiffs and the Class have been damaged as a result of the defects in design and manufacture of Beneful, and as a result of Defendant's failure to warn of its health risks, in an amount to be proven at trial.

**COUNT VI.**

**New York General Business Law ("GBL") § 349**
**Deceptive Acts and Practices Unlawful**
**(New York Sub-Class Only)**

62.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

63.     Plaintiffs and the members of the Class are consumers who purchased Beneful pet food produced by the Defendant.  Plaintiffs bring this action pursuant to New York Business Law Section 349.

64.     Defendant has engaged in deceptive practices in the sale of Beneful pet food

products, including: (1) false and misleading marketing concerning the quality of Beneful (2) failing to disclose and/or concealing this known defect and risk.

65.     Such actions and failures to act have caused direct, foreseeable and proximate damages to Plaintiffs and other members of the Class and Subclass.

66.     Plaintiffs and the other members of the New York Sub-Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the New York Sub-Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly market and advertise the healthy nature of Beneful.  Towards that end, Plaintiffs and the New York Sub-Class request an order granting them injunctive relief as requiring corrective disclosures and/or disclaimers on the labeling and advertising of Beneful and/or the removal of the harmful ingredients.

67.     Absent injunctive relief, Defendant will continue to manufacture and sell Beneful without warning to consumers of its harmful effects.

68.     In this regard, Defendant has violated, and continues to violate, section 349 of the New York General Business Law (GBL), which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendant's violation of GBL § 349 as described above, Plaintiffs and the other members of the New York Sub-Class have suffered damages in an amount to be determined at trial.

## COUNT VII.

**(Breach of Express Warranties under New York Common Law)**
**(New York Sub-Class Only)**

69.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

70.     Defendant provided Plaintiffs and other members of the New York Sub-Class

with written express warranties, including, but not limited to, warranties that Beneful was "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.

71.     Defendant breached these warranties by providing a product that contained harmful ingredients that are toxic, including but not limited to, propylene glycol and mycotoxins.

72.     This breach resulted in damages to Plaintiffs and the other members of the New York Sub-Class who bought Beneful but did not receive the goods as warranted in that Beneful was not healthy because it contained harmful ingredients that are toxic to animals.

73.     As a proximate result of Defendant's breach of warranties, Plaintiffs and the other New York Sub-Class members have suffered damages in an amount to be determined by the Court and/or jury in that, among other things, they purchased and paid for Beneful which did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant and they were deprived of the benefit of their bargain.  Moreover, Plaintiffs and the Class members suffered injury to property, specifically in the illness and deaths of their pets and expenses incurred, in an amount to be proven at trial.

## COUNT VIII.

### (Breach of Implied Warranty of Merchantability under New York Common Law)
### (New York Sub-Class Only)

74.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

75.     Plaintiffs and the other New York Sub-Class members purchased Beneful, which was promoted, marketed, advertised, packaged, and labeled as "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed, among other things.  Pursuant to these sales, Defendant impliedly warranted that

Beneful would be merchantable and fit for the ordinary purposes for which such goods are used and would conform to the promises or affirmations of fact made in Benefuls' promotions, marketing, advertising, packaging, and labels.  In doing so, Plaintiffs and the other New York Sub-Class members relied on Defendant's representations that Beneful had particular characteristics, as set forth above, and, at or about that time, Defendant sold Beneful to Plaintiffs and the other New York Sub-Class members.  By its representations regarding the reputable nature of the company and its products and by its promotion, marketing, advertising, packaging, and labeling of Beneful, Defendant warranted that Beneful was "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed.  Plaintiffs and the other New York Sub-Class members bought Beneful relying on Defendant's representations when, in fact and unbeknownst to Plaintiffs and the other New York Sub-Class members, Beneful contained toxic ingredients that were harmful to the health of their pets.

76.     Defendant breached the warranty implied at the time of sale in that Plaintiffs and the other New York Sub-Class members did not receive goods that were "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed, as represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

77.     As a proximate result of this breach of warranty by Defendant, Plaintiffs and the other New York Sub-Class members have suffered damages in an amount to be determined by the Court and/or jury in that, among other things, they purchased and paid for goods that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by

16

Defendant and they were deprived of the benefit of their bargain and spent money on goods that did not have any value or had less value than warranted or goods they would not have purchased and used had they known the true facts about them.

## COUNT IX.

### (Breach of Implied Warranty of Fitness for Particular Purpose under New York Common Law) (New York Sub-Class Only)

78.     The allegations contained in each paragraph set forth above in this Complaint are incorporated by reference as if fully set forth herein.

79.     Plaintiffs and the other New York Sub-Class members purchased Beneful, which was promoted, marketed, advertised, packaged, and labeled as "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed, among other things.   Pursuant to these sales and by Defendant's promotion, marketing, advertising, packaging, and labeling, Defendant impliedly warranted that Beneful was safe for Plaintiffs and the New York Sub-Class's pets' consumption.   Plaintiffs and the other New York Sub-Class members bought Beneful from Defendant relying on Defendant's skill and judgment in furnishing suitable goods as well as its representation that Beneful was "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and that customers' satisfaction would be guaranteed, among other things.   However, Beneful was not "healthy," offering "great nutrition" to dogs, promoting "healthy growth" and customers' satisfaction was not guaranteed because Beneful contained toxic ingredients that were harmful to the health of their pets.

80.     Defendant breached the warranty implied at the time of sale in that Plaintiffs and the other New York Sub-Class members did not receive goods that were "healthy," offering "great nutrition" to dogs, promoting "healthy growth" for their pets, as represented, and, thus, the

goods were not fit for the purpose as promoted, marketed, advertised, packaged, labeled, or sold.

81.     As a result of this breach of warrant by Defendant, Plaintiffs and the other New York Sub-Class members have suffered damages in an amount to be determined by the Court and/or jury in that, among other things, they purchased and paid for goods that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant and they were deprived of the benefit of their bargain and spent money on goods that did not have any value or had less value than warranted or goods they would not have purchased and used had they known the true facts about them.

## COUNT X.

### (Fraud, Deceit, and/or Misrepresentation under New York Common Law)
### (New York Sub-Class Only)

82.     The allegations contained in each paragraph set forth above in this Complaint are  incorporated by reference as if fully set forth herein.

83.     Defendant, through its promotion, marketing, advertising, packaging, and labeling of Beneful, makes uniform representations and offers regarding the quality of Beneful, as described above.   Defendant engaged in, and continues to engage in, such fraudulent, misrepresentative, false, and/or deceptive acts with full knowledge that such acts were, and are, in fact, misrepresentative, false, or deceptive.

84.     The aforementioned misrepresentations, deceptive, and/or false acts and omissions concern material facts that are essential to the analysis undertaken by Plaintiffs and the other New York Sub-Class members in deciding whether to purchase Beneful.

85.     Plaintiffs and the other New York Sub-Class members would have acted differently had they not been misled – *i.e.*, they would not have purchased Beneful had they known the truth about the toxic ingredients in Beneful.

86.     Defendant has a duty to correct the misinformation it disseminates through its advertising of Beneful.  By not informing Plaintiffs and the other New York Sub-Class members of the toxic ingredients in Beneful, Defendant breached this duty. Defendant also gained financially from, and as a result of, this breach.  Moreover, Defendant has a duty to disclose the omitted facts because Defendant was in possession of knowledge about the identity, formulation, and production of Beneful and of their ingredients, and this information is not reasonably available to consumers.

87.     By and through such deceit, misrepresentations, and/or omissions, Defendant intended to induce Plaintiffs and the other New York Sub-Class members to alter their position to their detriment.

88.     Plaintiffs and the other New York Sub-Class members justifiably and reasonably relied on Defendant's misrepresentations and, as a result, were damaged by Defendant's conduct.

89.     As a direct and proximate result of Defendant's deceit and/or misrepresentations, Plaintiffs and the other New York Sub-Class members have suffered damages in an amount equal to the amount they paid or the premium they paid for Beneful.  The exact amount will be proven at trial.

90.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and the other New York Sub-Class members.

91.     Plaintiffs and the other New York Sub-Class members are entitled to punitive damages due to Defendant's willful fraud and deceit.

## COUNT XI.

**(Unjust Enrichment under New York Common Law)**
**(New York Sub-Class Only)**

92.     The allegations contained in each paragraph set forth above in this Complaint are  incorporated by reference as if fully set forth herein.

93.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sale of Beneful, Defendant was enriched, at the expense of Plaintiffs and the other New York Sub-Class members through the payment of the purchase price for Defendant's Products.

94.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other New York Sub-Class members in light of the fact that Beneful, purchased by Plaintiffs and the other New York Sub-Class members, was not what Defendant purported it to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the other New York Sub-Class members for the monies paid to Defendant for the purchase of Beneful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the Class and Sub-class request that the Court enter an order of judgment against Defendant including the following:

A.      Certification of the action as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

B.      For an Order declaring that Defendant has committed the violations alleged herein;

C.      Injunctive relief in the form of an order requiring disclosures and/or disclaimers on the labeling and advertising of Beneful and/or removal of the harmful ingredients;

D.      An order requiring Defendant to pay Plaintiffs and other Class and Sub-class members an amount of actual, statutory, and punitive damages, and restitution in an amount to be determined at trial, and where allowed by law;

E.      An order grating equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unlawful, unfair and/or deceptive conduct alleged herein;

F.      An order granting Plaintiffs' reasonable costs and attorneys' fees; and

G.      An order granting such other relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a jury trial on all issues so triable.

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP

By: */s/ Todd S. Garber*
Todd S. Garber
D. Gregory Blankinship

Shin Hahn
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: -914-298-3283
Fax: 914-824-1561
tgarber@fbfglaw.com

Kim E. Richman (Pro Hac Forthcoming)
**THE RICHMAN LAW GROUP**
195 Plymouth Street
Brooklyn, NY 11201
(212) 687-8291 (t)
(212) 687-8292 (f)
krichman@richmanlawgroup.com

*Counsel for Plaintiffs*